# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# EASTERN DIVISION

| | |
|---|---|
| HEATHER E. HICKERSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No: 1:17-cv-01157-STA-egb |
| ) | |
| COMMISSIONER OF ) | |
| SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |

## ORDER AFFIRMING THE DECISION OF THE COMMISSIONER

Plaintiff Heather E. Hickerson filed this action to obtain judicial review of Defendant Commissioner's final decision denying her application for disability benefits under Title II and Supplemental Security Income (SSI) under Title XVI of the Social Security Act ("Act"). Plaintiff's applications were denied initially and upon reconsideration by the Social Security Administration. Plaintiff then requested a hearing before an administrative law judge ("ALJ"), which was held on March 15, 2016. On April 26, 2016, the ALJ denied the claim. The Appeals Council subsequently denied the request for review. Thus, the decision of the ALJ became the Commissioner's final decision. For the reasons set forth below, the decision of the Commissioner is **AFFIRMED**.

Under 42 U.S.C. § 405(g), a claimant may obtain judicial review of any final decision made by the Commissioner after a hearing to which he was a party. "The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Court's review is limited to determining

whether there is substantial evidence to support the Commissioner's decision and whether the correct legal standards were applied. *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997); *see also Landsaw v. Sec'y of Health & Human Servs*, 803 F.2d 211, 213 (6th Cir. 1986).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389 (1971)). It is "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Comm'r of Soc. Sec.*, 105 F.3d 244, 245 (6th Cir. 1996) (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The Commissioner, not the Court, is charged with the duty to weigh the evidence, to make credibility determinations and resolve material conflicts in the testimony and to decide the case accordingly. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997); *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). When substantial evidence supports the Commissioner's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).

Plaintiff was born on September 29, 1989, and has a high school education. Her previous employment consisted of working in fast food restaurants, at convenience stores as a clerk, and as a dry cleaner. She also cleaned houses. Plaintiff states that she quit this last job on September 15, 2011, as a result of back pain after being injured. She alleges disability beginning November 20, 2012, due to degenerative disc disease of the thoracic, lumbar, and intervertebral discs with pain and radiculopathy, anxiety and depression, headaches, and morbid obesity. She also allegedly suffers with asthma, arthritis, stomach aches, sleep loss, gastritis, and pain from her back, hips, shoulders, and legs.

The ALJ made the following findings: (1) Plaintiff has not engaged in substantial gainful activity since the amended alleged onset date and met the insured status requirements of the Act through March 31, 2016; (2) Plaintiff has severe impairments of spine impairment and obesity; but she does not have impairments, either alone or in combination, that meet or equal the requirements of any listed impairment contained in 20 C.F.R. pt. 404, subpt. P, app. 1 of the listing of impairments; (3) Plaintiff retains the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) and § 416.967(b) except that standing and/or walking is limited to four hours in an eight-hour workday; she can occasionally climb ramps and stairs; she can never climb ladders, ropes, and scaffolds; and she can occasionally balance, stoop, kneel, crouch, and crawl; (4) Plaintiff is unable to perform her past relevant work; (5) Plaintiff was a younger individual with a high school education on the alleged onset date; (6) transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules ("the grids") as a framework supports a finding that Plaintiff is not disabled whether or not she has transferable job skills; (7) considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as an envelope addresser and document preparer; (8) Plaintiff was not under a disability as defined in the Act at any time through the date of this decision.[1]

The Social Security Act defines disability as the inability to engage in substantial gainful activity. 42 U.S.C. § 423(d)(1). The claimant bears the ultimate burden of establishing an entitlement to benefits. *Born v. Sec'y of Health & Human Servs*, 923 F.2d 1168, 1173 (6th Cir. 1990). The initial burden of going forward is on the claimant to show that he or she is disabled

---

[1] R. 12 - 23.

from engaging in his or her former employment; the burden of going forward then shifts to the Commissioner to demonstrate the existence of available employment compatible with the claimant's disability and background. *Id.*

The Commissioner conducts the following, five-step analysis to determine if an individual is disabled within the meaning of the Act:

1. An individual who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.

2. An individual who does not have a severe impairment will not be found to be disabled.

3. A finding of disability will be made without consideration of vocational factors, if an individual is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the regulations.

4. An individual who can perform work that he has done in the past will not be found to be disabled.

5. If an individual cannot perform his or her past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.

*Willbanks v. Sec'y of Health & Human Servs*, 847 F.2d 301 (6th Cir. 1988).

Further review is not necessary if it is determined that an individual is not disabled at any point in this sequential analysis. 20 C.F.R. § 404.1520(a). Here, the sequential analysis proceeded to the fifth step with a finding that, although Plaintiff cannot perform her past relevant work, there are a significant number of jobs existing in the national economy that she can perform.

Plaintiff argues that substantial evidence does not support the ALJ's decision. She specifically argues that the ALJ erred in the weighing of the medical evidence, in particular a series of medical source statements from her treating physician, Wendy Cran-Carty, M.D. She

also contends that the ALJ did not consider the effect of her obesity on her limitations. The Court finds Plaintiff's arguments not to be persuasive.

Medical opinions are to be weighed by the process set forth in 20 C.F.R. § 404.1527(c). Under the treating physician rule, an ALJ must give controlling weight to the opinion of a claimant's treating physician if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 404.1527(c)(2). The term "not inconsistent" is meant to convey that "a well-supported treating source medical opinion need not be supported directly by all of the other evidence, (i.e., it does not have to be consistent with all the other evidence) as long as there is no other substantial evidence in the case record that contradicts or conflicts with the opinion." Soc. Sec. Rul. 96–2P.

If an ALJ decides that the opinion of a treating source should not be given controlling weight, the ALJ must take certain factors into consideration when determining how much weight to give the opinion, including "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Any decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating

source's medical opinion and the reasons for that weight." Soc. Sec. Rul. 96–2P; *see also Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013).[2]

Generally, an opinion from a medical source who has examined a claimant is given more weight than that from a source who has not performed an examination, 20 C.F.R. § 404.1502, 404.1527(c)(1), and an opinion from a medical source who regularly treats the claimant is afforded more weight than that from a source who has examined the claimant but does not have an ongoing treatment relationship. *Id.* § 404.1502, 404.1527(c)(2). In other words, "[t]he regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker." Soc. Sec. Rul. No. 96–6p. Opinions from nontreating sources are not assessed for "controlling weight." Instead, these opinions are weighed based on specialization, consistency, supportability, and any other factors "which tend to support or contradict the opinion" may be considered in assessing any type of medical opinion. 20 C.F.R. § 404.1527(c). State agency consultants are highly qualified specialists who are also experts in the Social Security disability programs, and their opinions may be entitled to great weight if the evidence supports their opinions. *See* 20 C.F.R. § 404.1527(e)(2)(i); Soc. Sec. Rul. 96-6p.

In the present case, substantial evidence supports the weight given to the medical evidence and opinions in the record and the evaluation of Plaintiff's residual functional capacity. The ALJ properly determined that Plaintiff could perform a limited range of light work.

---

[2] SSA has altered the regulations pertaining to the consideration of medical evidence. *See* 82 Fed. Reg. 15,132 (Mar. 27, 2017) (amending and correcting the final rules published at 82 Fed. Reg. 5,844 (Jan. 18, 2017)). Pursuant to these regulatory changes, SSA also rescinded Soc. Sec. Rul. 96-2p effective March 27, 2017, which is after the date of the ALJ's April 16, 2016 decision in this case. *See* 82 Fed. Reg. 16,869 (April 6, 2017) (clarifying effective date of rescission notice published at 82 Fed. Reg. 15,263 (March 27, 2017)).

The ALJ looked at Dr. Cran-Carty's medical opinions, including the first medical opinion form, which was completed in October 2012. R. 18, 631-36, 761-66 (duplicate). Dr. Cran-Carty marked the form to indicate that she believed Plaintiff could only lift up to twenty pounds occasionally because of "severe low back pain." R. 631. She also opined that Plaintiff could sit for four hours in a day or for two hours at a time and that she could stand/walk two hours each during a workday or for thirty minutes at a time. R. 632. Plaintiff was limited to occasional reaching, pushing/pulling, and use of foot controls, R. 633, and should never be exposed to unprotected heights; she could occasionally tolerate other workplace hazards, like moving mechanical parts, driving, humidity/wetness, dust and other pulmonary irritants, extreme cold, and vibrations. R. 635.

The ALJ assigned great weight to Dr. Cran-Carty's lifting and postural limitations, but he rejected the remainder of the checklist form as unsupported by the evidence. The Court finds that the ALJ had good reasons to discount Dr. Cran-Carty's opinion, and substantial evidence supports the weighing of her opinion. For example, none of Dr. Cran-Carty's own findings, nor any other evidence of record, showed that Plaintiff had pathology that could impose the degree of functional limitation that she opined to be present in the remainder of her assessment. *See Curler v. Comm'r of Soc. Sec.*, 561 F. App'x 464, 471 (6th Cir. 2014) (noting that controlling weight is not given to unsupported checklist opinions); *Sullivan v. Comm'r of Soc. Sec.*, 595 F. App'x 502, 507 (6th Cir. 2014) ("This court has previously held that it is proper for an ALJ to give a treating physician's opinion less-than-controlling weight [when] a claimant is 'unable to direct this court to any portion of the [treating physician's] records which support' the treating physician's ultimate opinion.")

Furthermore, Dr. Cran-Carty issued several later opinions suggesting a greater level of limitation than the October 2012 opinion. R. 1015-20, 1301-06. But, as the ALJ had partially accepted Dr. Cran-Carty's earlier opinion, the later, more restrictive opinions were conflicting and, thus, could properly be given no or minimal weight. Also, the later opinions were not supported by the longitudinal record, including Dr. Cran-Carty's own treatment notes. For example, clinical examinations failed to show the deficits in strength or movement that would have been expected under Dr. Cran-Carty's opinion. And, emergency room records showed that Plaintiff had full ("5/5") strength and normal range of motion and that she was in "no acute distress." R. 1579, 1600, 1646-47. Plaintiff's records also showed consistently normal gait.

The ALJ pointed out that Plaintiff's treatment was effective. After a neurostimulator was placed in her back, she reported that she was doing a lot more, including walking outside and cooking, and her "quality of life has dramatically improved." R. 1271. Finally, Plaintiff's records show that she engaged in normal daily activities, including caring for her daughter, a toddler, during a portion of the relevant period, and she could "perform all activities of daily living without assistance." R. 350, 376, 391, 412, 425, 511, 541, 854, 868, 906. *See Lester v. Soc. Sec. Admin.*, 596 F. App'x 387, 389 (6th Cir. 2015) (noting that the treating physician's proposed limitations conflicted with other evidence, including the claimant's daily activities).

The ALJ also considered three other medical sources in making his decision – Gary Osborne, LPC, a psychotherapist; Jennifer McFarland, LCSW, a counselor; and William Fulliton, Ph.D., a consultative psychological examiner. Dr. Fulliton opined that Plaintiff's ability to maintain concentration and persistence was moderately impaired and her ability to interact with others and adapt to changes in the work environment were markedly impaired. R. 767-70. As the ALJ pointed out, Dr. Fulliton had only seen Plaintiff one time, and other evidence in the

record was inconsistent with his opinion. For instance, while Dr. Fulliton opined that Plaintiff had a marked limitation in her ability to interact with others, forms Plaintiff had completed as part of the application process indicated that she spent time with others every day, she had no problems getting along with friends and family, she got along with authority figures, and she had never been laid off from a job due to difficulty getting along with others. R. 292-93, 770. Thus, Plaintiff's own comments contradicted Dr. Fulliton's opinion that she had marked limitations in social functioning.

The ALJ also looked at the opinions from Mr. Osborne and Ms. McFarland which indicated that Plaintiff had disabling-level mental limitations. Ms. McFarland opined that Plaintiff could not carry out even simple instructions, care for herself, or sustain a normal routine. R. 644. But Ms. McFarland consistently reported that Plaintiff had normal speech and behavior. R. 644, 648, 656, 663, 670, 674, 680, 738. Other medical sources also contradicted Ms. McFarland's opinion and showed that Plaintiff consistently had intact memory, normal judgment and insight, and no trouble with concentration. R. 1038, 1047, 1050, 1315, 1328. The ALJ, therefore, properly declined to afford Ms. McFarland's opinion weight.

Finally, the ALJ discussed Mr. Osborne's opinion, who had marked a form to indicate that Plaintiff had only fair ability to deal with the public, interact with supervisors, deal with work stress, understand complex or detailed job instructions, relate predictably in social situations, and demonstrate reliability. R. 1623-25. As with Ms. McFarland's opinion, the ALJ explained that he had found Mr. Osborne's opinion generally unsupported by medical evidence and generally inconsistent with the record as a whole. The ALJ focused on the extent to which Mr. Osborne's treatment notes failed to support the limitations he had marked on the form for Plaintiff. His treatment notes showed that Plaintiff had normal mental status, R. 1628, 1634,

1637, and that she was "doing well" without any serious affective symptoms. R. 1633. Accordingly, substantial evidence supports the ALJ's weighing of the medical evidence.

Next, Plaintiff argues the ALJ did not consider the effect of her obesity on her limitations, even though an ALJ is required to consider the effects of obesity in combination with the claimant's other impairments during the sequential evaluation process. *See* Soc. Sec. Rul. 02-1p. This ruling provides:

> An assessment should also be made of the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment. Individuals with obesity may have problems with the ability to sustain a function over time ... [O]ur RFC assessments must consider an individuals' maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule.

2000 WL 628049 at *6 (S.S.A.).

The Sixth Circuit has termed it "a mischaracterization to suggest that Social Security Ruling 02–1p offers any particular procedural mode of analysis for obese disability claimants." *Bledsoe v. Barnhart*, 165 F. App'x 408, 412 (6th Cir. 2006). Instead, an "ALJ's explicit discussion of the plaintiff's obesity indicates sufficient consideration of his obesity." *See Daily v. Colvin*, 2013 WL 1775152 *16-17 (M.D. Tenn. April 25, 2013) (citing *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 443 (6th Cir. 2010)).

In the present case, the ALJ cited Ruling 02-1p and found obesity to be one of Plaintiff's severe impairments at step two. He concluded that Plaintiff had documented no obesity-related complications that would produce any disabling functional limitations. Thus, the ALJ sufficiently discussed Plaintiff's obesity.

At step five, the Commissioner must identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity and vocational profile. *Jones*

*Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). The Commissioner may carry this burden by applying the grids, 20 C.F.R. Pt. 404, Subpt. P, App. 2. which directs a conclusion of "disabled" or "not disabled" based on the claimant's age and education and on whether the claimant has transferable work skills. *Wright v. Massanari*, 321 F.3d 611, 615 (6th Cir. 2003); *Burton v. Sec'y of Health & Human Servs.*, 893 F.2d 821, 822 (6th Cir. 1990).

The grids take administrative notice of a significant number of unskilled jobs a claimant can perform given her residual functional capacity. *See* 20 C.F.R. part 404, subpart p, appendix 2, § 200.00(b); Soc. Sec. Rul. 85-15. Here, the grids would direct a finding of not disabled for a person of Plaintiff's age, education, work history, and residual functional capacity if she could perform the full range of light work. *See* 20 C.F.R. pt. 404, subpt. P, app. 2, Rule 202.21.

Because Plaintiff could only perform a limited range of light work, the ALJ obtained the testimony of a vocational expert. A vocational expert's testimony in response to a hypothetical question that accurately portrays a claimant's vocational abilities and limitations provides substantial evidence to meet the Commissioner's burden at the fifth step of the sequential evaluation process. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512–13 (6th Cir. 2010). Here, the vocational expert testified that in light of Plaintiff's age, education, work experience, and residual functional capacity, she could perform work that exists in significant numbers in the national economy. This testimony provides substantial evidence for the ALJ's decision that Plaintiff was not disabled during the requisite time period.

Substantial evidence supports the ALJ's determination that Plaintiff was not disabled, and the decision of the Commissioner is **AFFIRMED**.

**IT IS SO ORDERED.**

                                        **s/   S. Thomas Anderson**
                                        S. THOMAS ANDERSON
                                        CHIEF UNITED STATES DISTRICT JUDGE

Date:   June 14, 2018.